**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| | § | |
| | § | |
| | § | |
| | § | |
| IN RE SUBPOENA DUCES TECUM TO | § | CIVIL ACTION NO. 2:11-mc-36 |
| INGETEAM INC. | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |

**GENERAL ELECTRIC COMPANY'S BRIEF IN SUPPORT OF**
**MOTION TO COMPEL DISCOVERY REGARDING**
**WIND TURBINE COMPONENTS FROM INGETEAM, INC.**

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, General Electric Company ("GE") hereby moves to enforce the subpoena it served to Ingeteam, Inc. on January 14, 2011 seeking documents and testimony concerning the design and development of certain wind turbine components in connection with GE's patent infringement lawsuit against Mitsubishi Heavy Industries, Ltd and Mitsubishi Power Systems Americas, Inc. (collectively, "Mitsubishi") in the United States District Court for the Northern District of Texas. A copy of the subpoena is attached as Exhibit A.[1]

## I.    INTRODUCTION

GE is currently engaged in a lawsuit against Mitsubishi whereby GE alleges that certain models of Mitsubishi wind turbines infringe U.S. Patent No. 7,629,705 ("the '705 patent"). *See* Ex. B at ¶¶ 16-21 (GE's Amended Complaint). As part of this lawsuit, GE seeks documents concerning the design and operation of certain components installed in Mitsubishi's wind turbines. These components are designed and manufactured by a third-party corporation, Ingeteam Corporación S.A ("Ingeteam Spain") and sold to Mitsubishi. GE requested access to the source code used in Ingeteam Spain's converter control unit ("CCU"), and Mitsubishi, under very strict conditions, was able to obtain this source code from Ingeteam Spain and produced it for inspection at its counsel's offices.

But this production was incomplete, and now that GE requests additional information such as (for example) the manuals and design documents for these components, which are used to decipher the dense source code and which are directly relevant to the issue of infringement of the '705 patent, Mitsubishi claims that Ingeteam Spain refuses to provide them with any additional information, and insists that GE must obtain the documents directly from

---

[1] *See* Declaration of Nicholas Sethi. "Ex. __" refers to the exhibits attached to this Declaration.

Ingeteam Spain. However, because Ingeteam is a Spanish company, direct discovery is only available through the Hague Convention on the Taking of Evidence Abroad, which takes many months to pursue, and under which U.S.-style depositions are unavailable. GE has reason to believe that Mitsubishi can in fact obtain the information from Ingeteam Spain, and recently GE filed a motion with the Court in Dallas presiding over the GE/Mitsubishi lawsuit, requesting that it compel Mitsubishi to do so. *See* Ex. C (GE's Redacted Motion To Compel Mitsubishi To Produce Discovery Regarding Wind Turbine Components Purchased From Ingeteam).

Faced with Mitsubishi's lack of cooperation, GE also has pursued discovery from Ingeteam, Inc. ("Ingeteam USA"), a wholly-owned subsidiary of Ingeteam Spain, that services, maintains and manufactures its parent's wind turbine components in the United States. It is GE's subpoena to Ingeteam USA that GE seeks to enforce in the present motion. Despite a close relationship with its Spanish parent, Ingeteam USA claims that it does not have possession of these materials, and that its parent refuses to provide them with access. However, as demonstrated below, Ingeteam USA does in fact have the requisite "control" to obtain the requested information from Ingeteam Spain for production in accordance with GE's subpoena.

This Court should compel Ingeteam USA to produce the documents requested by GE and to prepare a 30(b)(6) witness to testify on the topics listed in GE's subpoena.[2] Ingeteam USA and Ingeteam Spain share a sufficiently close relationship such that Ingeteam USA could obtain these documents from its parent. For example, Ingeteam Spain routinely identifies Ingeteam Inc. as an "international presence" for its wind turbine business, and exercises

---

[2] The parties had previously scheduled Ingeteam USA's deposition for May 31, 2011. However, Ingeteam USA notified GE that its corporate witnesses would not be prepared to testify. *See* Ex. G at 1 (May 17, 2011 Email from J. Rabena to A. Desai). Accordingly, and to avoid wasting resources, GE and Ingeteam USA agreed to table the deposition for now, and reschedule it after this Court issues its decision on the present motion.

considerable control over the operations of its U.S. subsidiary. At the direction of its parent, Ingeteam USA manufactures, tests, supports, and provides maintenance for the precise components at issue in GE's patent infringement suit against Mitsubishi. As part of these activities, Ingeteam USA undoubtedly possesses the ability to obtain the technical documents requested by GE, yet it has failed to produce them. Ingeteam USA and Ingeteam Spain should not be permitted to shield these documents from discovery by storing them overseas. Because Ingeteam USA clearly has access to these technical design and development documents, the Court should grant GE's motion and compel Ingeteam USA and its parent to produce these documents.

## II.    JURISDICTION

In support of this motion, GE alleges as follows:

1.    Ingeteam, Inc. is a Delaware corporation having a primary place of business located at 1025 W. Glen Oaks Lane, Suite 102, Mequon, Wisconsin 53092.

2.    This Court has personal jurisdiction over Ingeteam, Inc. as it maintains its primary place of business in this State and District and has purposefully availed itself of the privilege of conducting business in this District.

## III.    FACTUAL BACKGROUND

The present motion arises out of a lawsuit filed by GE against Mitsubishi in the Northern District of Texas alleging that Mitsubishi's wind turbines utilize technology covered by two of GE's patents. *See* Ex. B. One of these patents, the '705 patent, concerns a technology known as "ride through," which permits wind turbines to remain connected to a utility grid during and subsequent to certain electrical faults. Ex. D. at Abstract (the '705 patent).

Since ride through is typically implemented as part of the turbine's control system

software, GE requested that Mitsubishi produce the source code for its turbine control system software along with any other documents or materials that describe and detail how Mitsubishi's turbines accomplish this process.  Ex. E at 2-3 (GE's First Set of Requests for Production to Mitsubishi).  In response to this request, Mitsubishi obtained the source code from Ingeteam and made it available for inspection at Mitsubishi's outside counsel's office.  *See* Ex. F at 1-3 (Nov. 24, 2011 Email from J. Totten to N. Sethi).[3]  Mitsubishi claims that it has no further information on the relevant functionality of the component supplied by Ingeteam Spain.

GE served Ingeteam Spain's US subsidiary with a subpoena issued by this Court on January 14, 2011.  This subpoena included document requests for any materials that describe the design and operation of the source code in Ingeteam's CCU along with any documents relating to the use of Ingeteam's components to implement a zero voltage ride through feature in Mitsubishi's wind turbines. Ex. A at 6-7.  GE also requested that Ingeteam USA prepare a corporate witness on topics concerning the use of Ingeteam's components in Mitsubishi's wind turbines and the relationship between the two companies during development of these components.  *Id.*  GE had good reason to believe that this subpoena would result in the production of the additional materials, as Ingeteam USA is a wholly-owned subsidiary of Ingeteam Spain which manufactures, services, and repairs its parent's wind turbine components in the United States.  However, Ingeteam USA produced only two documents in response to GE's subpoena, neither of which contains the requested information.  Ex. G at 8 (Mar. 21, 2011 Email from A. Desai to J. Rabena).  Instead, Ingeteam USA insists that it is not in possession of

---

[3] Initially, Mitsubishi did not produce the source code for its Programmable Logic Controller ("PLC"), a portion of the control system which is in communication with the source code for Ingeteam's CCU, and relevant to GE's claims that Mitsubishi's turbines infringe the '705 patent. After additional requests by GE, Mitsubishi provided the code for inspection in late January of this year.

any additional design documents and is not able to obtain them from its parent, even though its counsel admitted that Ingeteam USA provided support and maintenance services for its parent's products in the United States. *Id.* at 4 (Apr. 28, 2011 Email from J. Rabena to A. Desai). When GE inquired why Ingeteam Spain refused to provide Ingeteam USA with these documents, it simply replied that its U.S. subsidiary "has no need for this information." *Id.* at 3 (May 2, 2011 Email from J. Rabena to A. Desai). GE attempted once more to obtain these documents from Ingeteam, Inc., but was met with the same resistance. *Id.* at 1 (May 17, 2011 Email from J. Rabena to A. Desai).

GE's requests for documents are not solely limited to the source code, but also include requests for the underlying design documents and internal specifications related to the source code. To date, neither Mitsubishi nor Ingeteam has produced any block diagrams, logic charts, or internal specifications[4] describing the functionality of the Ingeteam source code. These documents are highly relevant to GE's claims of infringement of the '705 patent. *See, e.g.,* Ex. C at 1-4; 10-11. Likewise, the follow-up deposition of Ingeteam Inc. that GE intends to take pursuant to its subpoena after the documents are produced is highly relevant.

## IV.    LEGAL STANDARD

A party to a lawsuit is permitted to subpoena documents from a third party that are in the third party's "possession, custody, or control." Fed. R. Civ. P. 45. Generally, a third party is considered to have "control" over documents "if it can likely obtain such documents upon demand." *Flavel v. Svedala Industries*, *Inc.*, No. 92-C-1095, 1993 U.S. Dist. LEXIS 18730

---

[4] Internal specifications refer to documents created for internal purposes at Ingeteam to describe the design and operation of the source code. These documents would differ from any more general manuals that Ingeteam provides to customers, such as Mitsubishi.

at *9 (E.D. Wis. Dec. 13, 1993).[5]  To determine whether a US domestic corporation has control over documents held by its foreign parent or affiliate, "courts focus on the closeness of the relationship between the entities" as often evidenced by four non-exclusive factors: "(1) adequate ownership share in the subsidiary by the parent; (2) interlocking management structures; (3) sufficient control exercised by the parent over the subsidiary's directors, officers, and employees; and/or (4) a 'connection to the transaction' at issue." *Id.* at *10-11.  Courts also look at whether the non-party refusing production benefits from denying the discovery sought.  *See Appleton Papers, Inc., et al. v. Whiting Paper Co.*, No. 08-C-16, 2009 U.S. Dist. LEXIS 71322 at *11 (E.D. Wis. July 31, 2009).  "If the requisite degree of closeness is found, domestic corporations may be required to produce documents in the possession of foreign parents or affiliates, even though the latter are not subject to the personal jurisdiction of the court."  *Flavel*, U.S. Dist. LEXIS 18730 at *10.

## V.    ARGUMENT

Ingeteam USA and Ingeteam Spain share a sufficiently close corporate relationship such that Ingeteam USA has the ability to obtain the documents requested by GE in the ordinary course of business.  Ingeteam Spain wholly owns its US subsidiary and routinely exercises control and influence over its decisions.  *See* Ex. H at 11 (Dunn & Bradstreet Comprehensive Report on Ingeteam, Inc.); Ex. I (Ingeteam Corporate Structure).   In its marketing brochures for its wind turbine components, Ingeteam Spain lists Milwaukee, the home of Ingeteam USA, as an "international presence."  *See, e.g.,* "Ingeteam Worldwide," located at http://www.ingeteam.com/EN/Ingeteamworldwide.aspx; Ex. J at 4-5 (Ingeteam brochure, "Partner to Optimize Your Wind Turbine Competitiveness").  Furthermore, in 2010 Ingeteam

---

[5] The standard for "possession, custody, or control" under Rule 45 is the same standard as under Rule 30.  *See* Fed. R. Civ. P. 45, Advisory Committee Notes, 1970.

Spain issued two press releases announcing the construction of a manufacturing plant for its converter components in Milwaukee and the expansion of the Spanish corporation's presence in the United States. Ex. K at 1 ("Ingeteam Expands Its U.S. Footprint With New Wind Facility: Spanish Engineering Firm To Open Manufacturing Plant In Wisconsin," May 28, 2010); Ex. L at 1 ("Ingeteam Reinforces Its Presence In The United States," Feb. 17, 2010). Ingeteam Spain is also publicly represented as having "operations in seven countries, including an office in Mequon," which is the primary place of business for Ingeteam USA. Ex. M at 1-2 ("Energy Firm Picks Milwaukee for Plant," *Milwaukee Journal Sentinel*, Feb. 15, 2010). Thus, regardless of its corporate structure, Ingeteam Spain promotes, manufactures, and services its products in the United States through its U.S. subsidiary, a relationship that is sufficiently close to compel production of documents owned by the parent. *See Appleton Papers,* 2009 U.S. Dist. LEXIS 71322 at *11 (holding that a domestic subsidiary had control over documents held by the parent where the parent listed the U.S. subsidiary "as one of its North American Production sites" and the two were "united in a shared business purpose"); *Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127, 132 (D. Del. 1986) (compelling the foreign parent of a U.S. subsidiary to produce additional technical documents in a patent infringement suit where the parent was responsible for the development of the infringing product, and the U.S. subsidiary was merely the acting arm of the parent.)

There is additional evidence that the two entities have interlocking management structures. Aitor Sotes, "chief executive officer of Ingeteam's U.S. operations," maintains his office in Zamudio, Spain, the primary place of business for Ingeteam Spain. Ex. M at 1-2; Ex. N at 1 ("Ingeteam CEO Aitor Sotes: Growth opportunity for foreign firms in U.S. wind power market," *Smartplanet.com*, Sept. 15, 2010). During an interview with an online energy

magazine, Mr. Sotes speaks on behalf of Ingeteam's global parent, stating that it was the "corporate leadership" which "decided to tackle the U.S. market," and described its US subsidiary as a mere "legal presence." Ex. N at 1. Given this close relationship between Ingeteam USA's CEO and the corporate leadership of its parent, it is simply disingenuous for Ingeteam USA to assert that it is a "separate corporate entity" and therefore lacks control over the requested materials. *See Flavel*, 1993 U.S. Dist. LEXIS 18730 at \*12 (rejecting the argument that a foreign parent lacks "interlocking management" with its subsidiary "simply because they do not share common directors or common officers").

Additionally, it is clear that Ingeteam Spain and Ingeteam USA collaborate in connection with the transaction at issue—the manufacturing, testing, support, and maintenance of its control system components. Ingeteam Spain designed, developed, and sold the control system components at issue in GE's present suit against Mitsubishi, and it is undisputed that the U.S. subsidiary supports and maintains the parent's control system components. Ex. G at 4-5 (Apr. 28, 2011 Email From J. Rabena to A. Desai). Moreover, Ingeteam USA's new Milwaukee plant will also test and "produce generators and converters for 1.5 to 5 MW wind turbines," precisely the components for which GE seeks documentation. Ex. K at 1. In fact, Mr. Sotes advertised that "having a U.S. facility will better enable us to serve customers in the U.S. who are already using our equipment on wind farms," which would include customers of Mitsubishi's 2.4 MW turbines. *Id*.

Nevertheless, Ingeteam Spain insists that "[Ingeteam USA], a maintenance company, has no need for this information." Ex. G at 3 (May 2, 2011 Email from J. Rabena to A. Desai). But it would be impossible for Ingeteam USA's engineers to manufacture, test, support, and maintain the control system components in Mitsubishi's turbines based solely on the

two documents Ingeteam USA identified as responsive to GE's request. Moreover, Ingeteam USA's selective production is evidence of its ability to obtain documents from Ingeteam Spain regarding the operation of the control system components in Mitsubishi's wind turbines. *See Afros S.P.A.*, 113 F.R.D. at 132 (finding that the production of four documents related to the design and development of a potentially infringing product demonstrated the subsidiary could obtain additional information from the parent).

Finally, both Ingeteam corporations stand to benefit from withholding production of these documents, and therefore should not be permitted to hide incriminating documents overseas. *See Appleton Papers*, 2009 U.S. Dist. LEXIS 71322 at *14-15 ("If a non-party will directly receive the benefit of an award, then it is unjust that it can frustrate the discovery process and the complete resolution of the issues by refusing to furnish documents in its possession.") (quoting *Afros S.P.A.*, 113 F.R.D. at 131). Should GE prevail in its patent infringement claims, Mitsubishi may face an injunction, reducing the number of wind turbine components it might purchase from Ingeteam and thereby decreasing the Ingeteam corporations' revenue from sales and maintenance activities. *See Afros S.P.A.*, 113 F.R.D. at *14 (finding that the foreign parent would receive a direct benefit due to increased royalties and the elimination of a competitor if it were to prevail in its patent infringement suit); *Appleton Papers*, 2009 U.S. Dist. LEXIS 71322 at *14-15. Given this incentive to withhold materials relevant to GE's case against its business partner Mitsubishi, Ingeteam should not be allowed to undermine the scope and spirit of the federal rules by selectively denying GE access to its technical design materials.

## VI.   CONCLUSION

For the reasons set forth above, GE respectfully requests that the Court grant GE's motion.

Respectfully Submitted,

*s/ Anthony S. Baish*

Anthony Baish
Wisconsin State Bar No. 1031577
GODFREY & KAHN S.C.
780 North Water Street.
Milwaukee, WI 53202
Phone: 414-273-3500
Fax: 414-273-5198
ABaish@gklaw.com

**ATTORNEYS FOR PLAINTIFF GENERAL ELECTRIC COMPANY**

6501573_1